So let's call the first case and get started, which is United States v. Streett 22-2056 and Mr. Smith, you may proceed. Good morning. May it please the court. Grant Smith with the Federal Public Defender's Office representing Bentley Street. I want to focus today on the Fourth Amendment issue, starting with the good faith exception. The good faith exception does not apply in this case. In order for that exception to apply, there must be some facts explaining why the officer thought that the place to be searched was linked to either Mr. Streett or the alleged criminal activity. No such facts exist in this affidavit. At best, the affidavit merely states that Mr. Streett lives in Bernalillo County, but that's not a sufficient connection to establish the requisite nexus. And as such, no reasonable officer would rely on this warrant. Apparently, the phone records did establish an address, is that right? Were there phone records? Yes, they did. But those phone records were not attached to the affidavit or submitted to the magistrate in getting the warrant, is that right? That's correct, and that's important because when conducting the good faith analysis, this court doesn't consider information that the officer knew but wasn't disclosed to the issuing magistrate. It was true, in fact, that Mr. Streett lived at 4620 Plume Road. That was his residence, wasn't it? I believe so. That's where he was when they executed the search, and that's what the phone records say. I'm looking at the warrant, and right on the front page, it's State of New Mexico versus 4620 Plume Road. And so somehow they made the connection between the phone records from CenturyLink or whomever to his residence. I mean, most people have their phones, except for my children, have their phones where they live. The combination of the correct address in the affidavit plus the Bernalino County and some of the others, and plus you have a magistrate here that did sign off on the warrant, why wouldn't that fit within the mainstream of our good faith cases? Well, for several reasons, and to kind of unpack that, I want to start with the clarification. I don't think we can just assume that, especially based on the information provided in this affidavit, that a subpoena request to a cell phone company is going to provide a record of address. I know for my own cell phone, it was purchased 10 years ago. I don't think I've ever updated my address on it. It's all online. So I don't think it's common knowledge that a reasonable officer is going to say, we got cell phone records, therefore we must have gotten an address. But in addition to answer your question directly with the address being in the caption, to say that would mean that no nexus is ever required. Every affidavit is going to have a place to be searched in the caption. Well, there's a little bit more. I really don't think there is. I mean, if you look at it in full, all they say is that the task force received a tip. So it's not even Detective Hartsock that's doing this subpoena request. So it's the New Mexico ICAC that issues a subpoena to T-Mobile, and based on that subpoena, ICAC discovered it was registered to Bentley Street, who lives in Bernalillo County. I mean, I think the common sense reading of that is that's what was fully discovered from this subpoena request. I want to make sure I understand. The search warrant had the caption with an address on it. But how about the affidavit, the search affidavit? Did that have a caption with that address on it? I would imagine it did. Do we know? I'm looking at it, and it does. Just common practice, I would say that it does. But every affidavit does. So to say that that's all that requires means that there needs to never be a nexus. You just have to have the address in that caption, and the court can infer, well, there's some nexus here, because why else would we be searching this residence? Let me just round out this line of inquiry for me. I have the affidavit. It does have the caption with the address. And I'm looking at page 4, and the affidavit states, The New Mexico Attorney General's Internet Crimes Against Children Task Force received the tip and issued a subpoena to T-Mobile USA for the account information related to the phone number and discovered it was registered to Bentley Street, who lives in Bernalino County. And my question is, if the affiant had put in, instead of who lives in Bernalino County, had put in who lives in 4620 Plume Road, Bernalino County, that would have been fine, right? Inarguably, that would have been fine. And I just want to tie this back to Gonzales. Presumably in Gonzales, the affidavit also included an address for a place to be searched in the caption. And that wasn't enough in Gonzales. Do you know that? Have you looked at the record in Gonzales? I could file a 28-J and verify that. But just the fact that the warrant was issued for an address, I would have to assume that that address was somewhere within that affidavit. And that wasn't sufficient to provide an access. Why wouldn't you characterize this as just negligence by the officers? I know, you know, I think Gonzales has really good authority for you, but, you know, one simple addition to this affidavit would have cleared probable cause. So they negligently drafted this thing. Isn't that one of the reasons we have the good faith exception, is to kind of overlook inconsequential mistakes that officers make? Because we have to conclude that no reasonable officer would have relied on this. Right. In making that conclusion, this court assumes that officers have a reasonable understanding of the law. So you repeatedly have decisions from this court saying you have to have an access, you have to connect the place to be searched with the alleged criminal activity. So any reasonable officer is going to know there has to be some fact in here that connects. And will recognize, as Gonzales makes clear, an officer will recognize when, a reasonable officer will recognize when that's deficient. Now Herring does, the Supreme Court case, contemplate these sort of inadvertent mistakes and provides forgiveness for them. But this is gross negligence, and I think Gonzales makes that clear. Could you, unless somebody wants to hear more about that, you still have to get over the inevitable discovery hurdle, and to me that may be the more difficult one, at least in my mind. Yeah, and turning to the inevitable discovery, that doctrine just doesn't apply in this case. I mean, essentially what the government is saying is that if we hadn't had written this facially deficient affidavit, we would have written a valid affidavit. That's not how the inevitable discovery doctrine works. If you look back to the cases the government cites, to give an example where there's a Miranda violation, courts don't say, well, if the officers had been told that they had violated the Miranda rights, then they would have read the Miranda rights, so it would have been inevitably discovered. And the reason that doesn't work, if you think on just a general practical level, is we know exactly what happened. So how can you say that it would have been inevitable to happen another way? Well, inevitable discovery always deals in a hypothetical. Your brief said what we shouldn't consider because it's hypothetical, but it is always a hypothetical, so I wasn't persuaded by that. I guess I want to draw this distinction. I recognize that hypotheticals are always at play. What's different here is that it's not a hypothetical. You have the factual scenario. No, you have a non-hypothetical, which may not satisfy the Constitution, or may, but you've got a hypothetical which, if it was inevitable, I don't see why inevitable discovery should not apply. I know there's not much case law out there, but it's not quite intuitive to me why inevitable discovery should not apply to a defective search warrant application. For two primary reasons. The first reason I just want to walk through, you know, the government stops the needle and says, okay, where we'll change this scenario. The magistrate gets the warrant, recognizes it's deficient, and informs Detective Hartsock. But why do you stop it there? I mean, why not move it back to when Detective Hartsock's writing the affidavit? Would he have inevitably put it in this nexus? We know what happened. He didn't. He didn't put it in the nexus. You move it to the magistrate. No, but you get the warrant rejected because it doesn't list the place to be searched or the strong evidence that that's where evidence will be, and they've already shown that they're highly motivated to get a warrant because they've, in fact, done one. Under that three-part test, they've already shown their motivation. I think it's almost a given that they would correct a very simple mistake and say I'll file another search affidavit. I guess the problem is more fundamental of why do you say that the magistrate would have detected? The magistrate didn't. So how does the government prove that the magistrate would have? There's no evidence showing that they would have detected it and told Hartsock of his deficiency, and that's what's required, historical facts that are capable of rather good indication. You're right. It is a hypothetical, but if it had been rejected, presumably the magistrate would have said why it was being rejected. I don't think that's an unreasonable presumption. I guess probably not, no, but what historical facts would show that the magistrate would reject it? You never have historical facts. Well, that's what the inevitable discovery would imply. But I guess the second reason, maybe more persuasive, is that Leon says what happens when your good faith exception doesn't apply. The evidence gets excluded. And the reason for that is that we want to encourage officers to submit all material information into an affidavit. So what the government is saying is, okay, if we've omitted material information and the exclusionary rule applies, then we want to be rewarded for omitting that information because we have it. Those two can't be harmonized. Well, I guess the counter would be the deterrent effect of the exclusionary rule is not largely advanced on the record here for some of the reasons that Judge Ebell was suggesting. Well, Leon already contemplated that and said when you have a bare-bones affidavit, when you fail to provide material information into the affidavit, they've already waited and said the exclusionary rule is the appropriate remedy in that context. Well, but the exclusionary rule is, at its core, a deterrence rule. And deterrence is when the officers are doing something they shouldn't do like beating people up to get confessions or breaking into houses. This mistake was just an innocent, I assume, I mean, there's no reason for it. There's no officer gain because of the mistake. They didn't get any information that they couldn't have easily gotten with just one extra phrase. And so I don't see any deterrent worry here to adopting a saying that this would fall within the good faith exception. But Leon already has. It says when you have a bare-bones affidavit that the deterrent effect is advanced because we want to encourage officers to include all the information into an affidavit. Leon says in that context that the exclusionary rule will apply. You know, that, in a way, that does define, you have to define what you mean by what was meant there by bare-bones. There probably was a practice before just we want to search this house, give us a warrant, please, and that would be bare-bones. But this is not a bare-bones affidavit. This is a fairly extensive affidavit. As to the nexus requirement, there's absolutely no facts at all. It is bare-bones as to that component. If I could ask you to shift gears just quickly, could you just react to the U.S. v. Hansen Supreme Court case and how that plays or affects your argument in the briefs at all? Just quickly, and I'll reserve the remainder of my time. I'll just say that the key difference is it's a different statute. It has a different signatory requirement, and that's the way that the Supreme Court was able to import those more restrictive definitions onto the two terms that were at issue in that case. All right. Thank you, counsel. Let's hear from the government. Good morning, and may it please the court, counsel. Paige Messick for the United States. I also intend to focus on the Moore issue here. And first, we have a good-faith argument, and I'm happy to address that if the court would like. But because that argument is fairly straightforward, I would like to move first to inevitable discovery. And I'd like to begin by addressing Street's contention that applying inevitable discovery here would vitiate Leon, do an end run around Knox, or just generally swallow the good-faith exception. Inevitable discovery is not an extension of our good-faith argument. These are distinct doctrines. And what we're asking for is fairly narrow. When an affidavit fails to establish probable cause, that is typically because probable cause doesn't exist. Those facts aren't in the world, or the officer doesn't know them. It's rarely because the officer has probable cause and has just forgotten to leave part of it out. So applying inevitable discovery here does not turn most cases that fail good faith into inevitable discovery cases. But in a sliver of cases that fail good faith, where the officer's mistake is so readily fixable that the court can be confident that going there and fixing it wouldn't have any effect, any material effect on the timing of the execution of the warrant or what's found at the time, then inevitable discovery does have a role to play. I also want to address Street's contention that it's improper to look to subjective intent and knowledge when applying inevitable discovery. He's absolutely right that good faith does not look into an officer's subjective intent and knowledge. Good faith stops at the four corners of the affidavit. But inevitable discovery does look into subjective intent. It's not evaluating objective reasonableness under the Fourth Amendment. It's an exclusionary rule question. And to illustrate that, imagine that you have Detective Hartsock. Instead of going immediately to a warrant for the residence, let's say he decides to do a knock and talk first. And he goes to Street's house and he talks to him and he gets what he thinks is valid consent to search his house and search his devices. But it turns out that that wasn't valid consent. The prosecutor at the suppression hearing asks him, what would you have done if you hadn't done this knock and talk or if he said you couldn't come in or whatever? And Detective Hartsock says, well, actually, that was it. I would have maybe gone back to the phone records or more subpoenas, but I didn't think I had probable cause at that time. Then we don't have an inevitable discovery argument. But on the other hand, he says, well, I already have my affidavit written. It was sitting back at my office. I was ready to file it. I just wanted to give this a chance first. Then we do have an inevitable discovery argument. And that turns on the subjective intent of Detective Hartsock in that case. So while there is no rule for subjective intent in good faith, there absolutely is an inevitable discovery. We have not extended the doctrine inevitable discovery in this context yet. And I know what's the roster of other circuits that have taken this step? What's the best case out there that we could look to for guidance? The roster consists of one, and it's the Third Circuit and Stabile, as far as I'm aware. And Stabile was, in fact, somewhat similar to these. The officers have probable cause for the item that they receive a warrant for, but they have put the wrong hard drive in the caption and failed to establish any connection to the hard drive that they are actually getting a warrant for. And the Third Circuit says, no, inevitable discovery can apply here. The historical facts are that the officers had the probable cause readily available for the device that they actually searched, and they have a demonstrated practice of seeking warrants. Those are the historical facts capable of ready verification. And on those facts, they said that it was inevitable that a valid warrant would have issued. Here, too, we have historical facts of the same ilk. Detective Hartsock knew from four different sources that this plume address was Street's house. And he also had a demonstrated practice of seeking warrants. He got five of them in this case. And we also have the circumstances of the approval of the warrant. He's on the phone with the magistrate judge. And so if the magistrate had said to him, I'm sorry, I can't approve this, I don't know why you've shown that this is this guy's house, Detective Hartsock could have fixed that right there. He has those facts at his fingertips. He has them on the tip of his tongue. He doesn't need to sit down and write a new affidavit. He's got the judge on the phone. They could have just addressed it right then and there. But it's true. There really is no nexus to the address search. I mean, zero. I wouldn't say zero because we have a good faith argument. I guess it's in the right county. Sure. It's in the right county. I mean, I think the steps are simple. It's that the affidavit says first that subpoenas will sometimes issue from the ICAC coordinator to the providers to establish an address of the incident. So they issue these subpoenas to establish an address of the incident. In this case, the ICAC coordinator did issue a subpoena to T-Mobile for the phone number at issue and discovered, pursuant to that subpoena, that it was registered to Bentley Street, who lives in Bernalillo County. So we know that they have served a subpoena seeking address information, have received at least some address information. It is not sufficient to establish probable cause. We're not saying this is a substantial nexus, but it is a minimal nexus, and that's all that we need for good faith. It's not that large of a leap. It's a reasonable inference to say this affidavit is clearly seeking to search this man's residence. He puts information about seeking the address, and you can assume or infer that he has learned from T-Mobile that this is where the guy lives. We're pointing that this is where the guy lives. Where in the affidavit does the this appear? Well, the 4620 plume is in the caption. That's the problem. It's described. I beg your pardon? 4620 plume is in the caption. It's described in detail. Of the affidavit. Of the affidavit. And so you're hanging your hat on the fact that it is in the caption. I mean, what if the caption didn't have an address on it? That would be a much more difficult case. But it's pretty clear here. He's described, you know, it's a two-story house. It's stucco and all of this stuff. And there's also information in the affidavit showing that he clearly thinks this is the residence. I'm going to find here indicia of residence. I'm going to find his cell phone. All of this stuff that makes sense for a house. So while the connection was not clearly drawn enough for us to say that there is probable cause here, there is at least a minimal nexus. There is a reasonable inference. And if there is a reasonable inference on good faith, the court has to take that inference. That inference was not available in Gonzales. That's why Gonzales failed the good faith test. We have something more than that here, and that something more is enough. I'd also like to address the inevitable discovery of the victim's identification. Street's argument here is limited to asserting that the district court made a clear error of fact. But Judge Browning just didn't do what Street says that he did. First look at the suppression hearing transcript. It's really clear from that testimony that Detective Hartsock did not do this pivot table Excel sheet analysis until after the warning. He says so. And so there's really no reason for Judge Browning to have been confused. Our briefing that followed the suppression hearing reiterated that series of events in the right order. Then you look at Judge Browning's factual section in his memorandum opinion, and it's logically arranged. He talks about what Detective Hartsock did with those records right after he addresses getting the records. That makes sense. That does not show that he didn't understand the order in which things happened. He goes on later to address the search warrant of the house in a different section. And then when you turn to his legal analysis, there simply aren't any chronological connectors there that would show that he made the mistake that Street is contending that he made. He mentions Detective Hartsock sorting this information in his sheet because it shows how you can use the records, but there's nothing in there that says he had already done this. He'd already done this before he got the warrant, and that's how I know that he would have kept going because he already had such good information. Judge Browning never says that. That is entirely an inference drawn from the ordering of things in the opinion by Street. And the court's not in the business of inferring that the district court may have made a mistake of fact and sending it back for that reason. There's no reason to do so here either. Could you touch on the overbreath question? Your position really puts a lot of work on the word persuade, and it's a pretty common term. And here, Mr. Street may be cast a wide net to victims, but they correctly argue that a lot of these images were sent without a whole lot of interaction between Street and the victim. At least maybe as applied here facially, but persuade is a pretty broad term in this context. A couple of things I would like to say to that. First, factually, I don't think it's true that he didn't engage in much interaction with these victims. He exerted psychological pressure on them. I mean, he threatened to out one young man as gay on Twitter. He told one young woman that he was suicidal or that he really or took advantage of her suicidal or depressive state. So he was really engaged with each of these. Mr. Street did not ask for any additional basis in the factual basis of the plea agreement. If he'd done so, we might have provided more. But this is his appeal, and he hasn't challenged that yet. Turning to what persuade means and how much weight it has to carry in our argument. Yeah, because, I mean, you've shown some inducement and some coercion, but the statute also uses a very broad and maybe more vague term. Well, I don't think that he's ever really argued that what he did doesn't count as persuading. But I think that persuade carries, I mean, the definition of persuade does some of the work in this argument here. You shouldn't take the very broadest possible definition so that it could encompass the most possible protected conduct. You should construe it in a way that avoids constitutional difficulties. But you don't just have to look at persuade, because there's also elements of the statute that requires that the defendant persuade, entice, induce, whatever it is, for the purpose of having that minor engage in sexually explicit conduct to create a visual image or recording of it. So some of his examples of persuade simply, they don't meet that element either. And so you're already restricted to concerted action. I don't see why the second part of that sentence limits it very much. I mean, if you were a boyfriend and said, I want a picture of you that's sexually explicit, but just you, not anybody else. I'm not going to ask you to engage in any act other than taking this photograph. And I want it because I admire you. Wouldn't that be a persuade? And I think that you would have to look a little bit further to the background facts of the relationship between the asker and the minor. I don't see how that, I mean, that really makes me nervous. Because then you're getting, I mean, I'm concerned about the nexus with sexting, which is something, unfortunately, that an awful lot of young teenagers apparently engage in. Let me say something else about this, the persuade argument, though. And even if the court thinks that there are concerns about persuade, Mr. Street didn't focus his argument below on persuade. He attacked the entire statute, 2251, all six of its verbs, and said that this entire statute is overbroad. All of it brings in too much. And the whole thing of it doesn't have enough legitimate conduct. He's saying now, well, it's okay if I just narrow that to one of the verbs. But what he's requesting is not more narrow. He's changing the numerator and the denominator of this equation. It is an entirely different question at this point. And so it's not real, the district court, you won't see any discussion about persuade and how far it reaches in the district court opinion. Because it had a full day evidentiary hearing and several rounds of briefing about teen sexting and nothing else related to persuade. So how would you suggest we address this sexting issue in a sentence? In a sentence? Very brief, yeah. Okay. It might be a compound sentence. The Supreme Court has consistently held as a category that child pornography involving real minors is not entitled to First Amendment protection. 2251A only reaches child pornography that involves real minors. Therefore, anything that falls within 2251A is not entitled to First Amendment protection, including teen sexting. All right. Thank you, counsel. And have a little bit of rebuttal, Mr. Smith. I just want to make two points. First, as to Stabile that the government pointed to, I think it's very important that the good faith exception did not apply in that case. And so as to cases where the good faith exception is applied and found that the evidence should be excluded, there is no circuit court case that then follows up with inevitable discovery doctrine. The count on that is zero. And second, the government is arguing about this persuade provision and the scope of it, but it continues to omit that Mr. Street's factual basis for his plea, which the government agreed was sufficient, was that he asked for these photos. That was it. So if there's any argument about the scope of persuade, simply asking for a photo, the government has already agreed that that's sufficient to satisfy the persuade provision. If there's no other further questions, I would just respectfully request that this court be reversed. Okay. Thank you, counsel. We appreciate your arguments. Both of you are excused.